IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KARLESTER YOUNG                 :          CIVIL ACTION
                                :
        v.                      :
                                :
KIP HALLMAN, et al.             :          NO. 23-268

MEMORANDUM

Bartle, J.                                    January 29, 2024

Plaintiff Karlester Young, a prisoner currently incarcerated at State Correctional Institution Phoenix ("SCI-Phoenix"), brings various claims against the Pennsylvania Department of Corrections ("DOC") and various of its employees; and against Wellpath Holdings LLC, the corporate health care provider at SCI-Phoenix, and various of its employees.

Young alleges that defendants' denial of medical care for his Hepatitis C condition violates his Fourteenth Amendment right to equal protection and his Eighth Amendment right against cruel and unusual punishment.  Additionally, he claims defendants have subjected him to involuntary medical research in violation of his Eighth Amendment right.  He also asserts that defendants violated his Fourth Amendment rights against unreasonable searches and seizures by performing medical tests on him and his rights under the Fifth Amendment because defendants were unjustly enriched by performing those medical

tests and by taking his blood, RNA and DNA without just compensation.  Finally, he alleges that defendants' failure to treat his medical condition constitutes medical malpractice under Pennsylvania law.

Before the court are the motions of defendants[1] to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state claims upon which relief can be granted.

I

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must accept as true all well-pleaded factual allegations in the complaint and draw

---

1.    The pending motions are as follows: (1) the motion to dismiss, dated May 9, 2023, filed by defendants Pennsylvania Department of Corrections and ten of its employees: S. O'Neill, Registered Nurse at SCI-Phoenix; Monique Savage, Registered Nurse Supervisor at SCI-Phoenix; Britnay Huner, Corrections Health Care Administrator at SCI-Phoenix; Jamie Sorber, former Superintendent of SCI-Phoenix; Keri Moore, Administrative Officer; D. Varner, Administrative Officer; Dr. Paul Noel, former Chief of Clinical Services; George Little, former DOC Secretary; and John Wetzel, former DOC Secretary (Doc. # 20); (2) the motions to dismiss, dated September 27, 2023 and September 29, 2023, filed by Corina Campos, Registered Nurse at SCI-Phoenix (Docs. # 47, 54); (3) the motion to dismiss, dated September 27, 2023, filed by defendants Jorge Dominics, CEO of Wellpath; Kip Hallman, former president of Wellpath; Dr. Anthony Litizio, medical director of SCI-Phoenix (employed by Wellpath); and Thomas Pandurn, chief clinician of Wellpath (Doc. # 49); and (4) the motion to dismiss, dated October 11, 2023, filed by defendants Wellpath Holdings LLC and its employees: PA Stephen Kaminsky; PA Vanessa Amoah Oti-Akenten; and CRNP Jeanne Defrangesco (Doc. # 59).

all reasonable inferences in the light most favorable to the
plaintiff.  See Phillips v. Cnty. of Allegheny, 515 F.3d 224,
233 (3d Cir. 2008); Umland v. PLANCO Fin. Servs., Inc., 542 F.3d
59, 64 (3d Cir. 2008).  The court may also consider "exhibits
attached to the complaint and matters of public record."
Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998
F.2d 1192, 1196 (3d Cir. 1993) (citing 5A Charles Allen Wright &
Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed.
1990)).  When there is a document "integral to or explicitly
relied upon in the complaint," it may also be considered as
there is no concern of lack of notice to the plaintiff.  See
Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (quoting In
re Burlington Coat Factory Secs. Litig., 114 F.3d 1410, 1426 (3d
Cir. 1993) (quotation marks omitted)).

Rule 8 of the Federal Rules of Civil Procedure
requires that a pleading contain "a short and plain statement of
the claim showing that the pleader is entitled to relief."  Fed.
R. Civ. P. 8(a)(2).  A complaint need not include "detailed
factual allegations," but it must state "more than labels and
conclusions" and must provide "enough [factual allegations] to
raise a right to relief above the speculative level."  Bell Atl.
Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Plaintiffs must
"nudge[] their claims across the line from conceivable to
plausible."  Id. at 570.  "Threadbare recitals of the elements

of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Id. at 679 (citing Fed. R. Civ. P. 8(a)(2)). When a plaintiff proceeds pro se, their pleadings are liberally construed but must allege sufficient factual matter to support their claims. See Rievera v. Monko, 37 F.4th 909, 914 (3d Cir. 2022).

II

Young alleges he has Hepatitis C, an infectious disease which may cause liver inflammation. He was diagnosed with Hepatitis C for the first time by the Pennsylvania Department of Corrections in 2012.

Treatment for chronic Hepatitis C is meant to suppress viral activity and replication, decrease inflammation in and damage to the liver, and prevent further inflammation and damage. Since May 2018, the American Association for the Study of Liver Disease ("AASLD") has recommended that all incarcerated patients with chronic Hepatitis C infections be treated with direct-acting antiviral drugs ("DAADs"). Young notes that the Centers for Disease Control ("CDC") has stated the AASLD guidelines are the appropriate standard of care for patients

4

with Hepatitis C.  The DOC protocol and the CDC identify those with a detectable viral load of Hepatitis C as having "chronic Hepatitis C."  The goal of treatment with DAADs is for a patient to achieve a sustained virological response, that is undetectable Hepatitis C virus in the blood twelve or more weeks after completing treatment.  Hepatitis C treatment distinguishes between those who are antibody positive only and those who have a detectable viral load of the disease as measured by an RNA test.

On June 12, 2015, Salvatore Chimenti, Daniel Leyva, and David Maldonado, representing a class of prisoners with chronic Hepatitis C, brought a class action in this court against the Pennsylvania Department of Corrections and various of its employees.  See Complaint, Chimenti v. Dep't of Corr., Civ. A. No. 15-3333 (E.D. Pa. June 12, 2015) (Doc. # 1). Plaintiffs maintained that the then-current DOC's treatment protocol for prisoners with chronic Hepatitis C was unconstitutional under the Eighth Amendment because it denied prisoners access to necessary and proper medical care. Plaintiffs alleged that the DOC failed to treat those with chronic Hepatitis C with DAADs as recommended by the CDC.

In February 2019, my colleague, Judge John R. Padova, granted final approval of a class action settlement under Rule 23(e) of the Federal Rules of Civil Procedure.  Order, Chimenti,

Civ. A. No. 15-3333 (E.D. Pa. Feb. 7, 2019) (Doc. # 139).
Pursuant to his order, the court retained jurisdiction over the
DOC for the purposes of its Hepatitis C protocol until June 30,
2022.  On June 10, 2022, Young sent a letter to Judge Padova
requesting that he be treated for his Hepatitis C condition in
accordance with Chimenti.  No further orders were entered to
implement the settlement agreement, and the court's jurisdiction
over the case ended on October 18, 2022.  See Order, Chimenti,
Civ. A. No. 15-3333 (Oct. 18, 2022) (Doc. # 142).

        Under the terms of this settlement agreement, the DOC
replaced the then-current Hepatitis C protocol with a new
protocol in 2019 reflecting the terms of the agreement.[2]  This
agreement provides that inmates would receive different
treatment based on their Metavir Fibrosis score, which
identifies the severity of their Hepatitis C.  Inmates with a
fibrosis score of F-0 to F-2 would not receive DAADs, and
instead, would have their score reevaluated every six months.
If periodic evaluations demonstrated a fibrosis score of F-2 or
greater, then the settlement agreement and the DOC's operative

---

2.   Young introduced the settlement agreement filed in the
Chimenti litigation as an exhibit to his response to defendants'
motions to dismiss.  See Exhibit #1 to the Unopposed Motion for
Preliminary Approval of Class Action Settlement, Chimenti, Civ.
A. No. 15-3333 (E.D. Pa. Nov. 19, 2018) (Doc. # 125-2).

protocol required that inmates receive adequate treatment within six months.

Since the changes required by the Chimenti settlement, the protocol was updated again in 2021.  As the court still had jurisdiction, the 2021 protocol is still in line with the changes required by Chimenti.  Currently, DOC protocol states that patients who are "antibody positive only (confirmed by an undetectable viral load) do not have chronic Hepatitis C and will be followed in Chronic Care Clinic at the discretion of the Site Medical Director, if the patient exhibits signs or symptoms of liver disease."  See Department of Corrections, Access to Health Care Procedures Manual, Section 13.02.01, § 20(D)(2) (effective Feb. 23, 2021).[3]  Even when a patient has an undetectable viral load, he or she must still receive various "yearly labs" to monitor his or her viral load.  Every six months, patients without cirrhosis must receive liver function tests.  See id. at § 20(D)(3)(d)(2)(b), (d).

III

Plaintiff states in his complaint that he has Hepatitis C and that the DOC has failed to administer DAADs to him pursuant to DOC protocol.  Yet, his supporting factual

---

3.  The policy is available at: https://www.cor.pa.gov/
About%20Us/Documents/DOC%20Policies/13.02.01%20Access%20to%20
Health%20Care.pdf.

allegations and his undisputed medical records which he provided as an exhibit to his briefing in response to defendants' motions to dismiss demonstrate that Young currently has an undetectable viral load of Hepatitis C as measured through RNA testing and therefore does not have chronic Hepatitis C.

According to these records, plaintiff was first diagnosed with Hepatitis C within the DOC health system in 2012. On April 8, 2016, his viral load of Hepatitis C was tested, and the test found that he had no viral load of Hepatitis C.  The DOC continued to monitor his viral load in chronic care clinic. On August 19, 2019, Young avers that he was discontinued from the chronic care clinic due to a viral load of zero.  Jeanne DeFrangesco, former Infectious Diseases Coordinator, describes Young in his medical records as a "natural responder."

On or about April 7, 2022, Young reported to sick call for treatment and diagnosis of "electric-like spasms of pain in the region of his liver and waistline" among other symptoms.  He alleges these symptoms are the result of the prison's failure to treat his Hepatitis C.  After this sick call visit, Young's viral load of Hepatitis C was tested, and he was again found to have zero viral load.

On or about April 18, 2022, he filed a grievance alleging that his various symptoms were a result of the prison

and the failure of Wellpath, the health care provider at SCI
Phoenix, to treat his Hepatitis C.

According to the complaint, Young reported to sick
call again on April 29, May 19, May 26, and June 9 of 2022 and
had blood drawn on multiple occasions between these visits.  On
May 19, 2022, defendant Corina Campos, a Registered Nurse at
SCI-Phoenix, told Young that he did not have Hepatitis C.  On
May 26, 2022, Young alleges that Vanessa Amoah Oti-Akenten, a
medical provider employed by Wellpath at SCI-Phoenix, told him
that his medical records confirmed he did not have Hepatitis C.
Shortly after this sick call visit, Young sent a letter to Judge
Padova requesting treatment pursuant to the settlement agreement
in Chimenti.  On June 9, 2022, Stephen Kaminski, a medical
supervisor and health care provider employed by Wellpath at SCI-
Phoenix, noted that Young did have Hepatitis C, but that he
should "wait and see" as to when he would be treated.  On July
29, 2022, S. O'Neill, Infectious Disease Nurse at SCI-Phoenix,
stated that Young's most recent RNA Quant test "showed no viral
load."

On September 14, 2022, plaintiff reported to a chronic
care clinic check-up, at which point he and the nurse discussed
potential treatment.  He reported to sick call again on
September 28, 2022.

In his response to defendants' motions to dismiss,
Young attached portions of his medical records as an exhibit.
These records demonstrate that he was last tested for Hepatitis
C on or about March 23, 2023, and his Metavir Fibrosis "score"
was F-1.  Based on that score and his RNA test result on July
29, 2022 of an undetectable viral load, Young would not be
eligible to be treated with DAADs according to DOC protocol or
the CDC standard of care.

IV

In Count I, Young alleges that defendants' failure to
administer DAADs to him for his Hepatitis C diagnosis have
violated his right to equal protection as codified in the
Fourteenth Amendment.

The Equal Protection Clause of the Fourteenth
Amendment requires that state actors must treat equally all
persons similarly situated.  See Stradford v. Sec'y Pa. Dep't of
Corr., 53 F.4th 67, 73 (3d Cir. 2022).  The Equal Protection
Clause does not forbid classifications but requires that any
such classifications be rationally related to a legitimate
government purpose.  City of Cleburne v. Cleburne Living Ctr.,
473 U.S. 432, 446 (1985).  State action is presumed to be valid
and will be upheld if it is rationally related to a legitimate
state interest.  Tillman v. Lebanon Cnty. Corr. Facility, 221
F.3d 410, 423 (3d Cir. 2000).  This presumption of validity,

however, does not apply in the case of certain classifications, such as those based on race, alienage, national origin, or gender.  See Cleburne, 473 U.S. at 440-41.  Young does not allege that his treatment is due to a classification based on race, alienage, national origin or gender.  The state action alleged is presumed to be valid.

Instead, he maintains that while other inmates have been treated with DAADs for Hepatitis C, he was not.  However, there is a rational basis for the difference in state action. Young simply does not plausibly allege that he suffers from chronic Hepatitis C so as to be eligible for treatment with DAADs under this rational basis.  He states in his complaint that O'Neill informed him on July 29, 2022 that he had an undetectable viral load of Hepatitis C and that such a diagnosis requires no treatment.  At that time he did not have chronic Hepatitis C, and therefore, treatment with DAADs was not appropriate according to the DOC's current Hepatitis C protocol and CDC standard of care.  He also attaches medical records which similarly establish that he did not have chronic Hepatitis C during the relevant time period.  The interest in conserving resources and only treating individuals with DAADs if it is medically necessary is a legitimate government interest and denying individuals with an undetectable viral load such treatment is therefore rational.

As Young has failed to state a claim of a violation of the Equal Protection Clause based on his medical treatment, Count I will be dismissed as to all defendants.

V

Next, Young avers in Count II that defendants' failure to treat his Hepatitis C with DAADs violates his Eighth Amendment right against cruel and unusual punishment.

The Eighth Amendment prohibits the imposition of "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." Helling v. McKinney, 509 U.S. 25, 32 (1993). It requires prison officials to provide inmates with adequate medical care. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citing Helling, 509 at 32). To establish a claim of deliberate indifference to an inmate's medical needs, "plaintiffs must demonstrate (1) that the defendants were deliberately indifferent to their medical needs and (2) that those needs were serious." Rouse, 182 F.3d at 197. The first prong, whether defendants were deliberately indifferent to plaintiff's medical needs, requires proof that defendants were subjectively aware of the risk of serious harm. See Farmer v. Brennan, 511 U.S. 825, 839 (1994). The second prong, whether those medical needs are serious, is an objective test. Id. at 834.

12

Young alleges he was denied treatment with DAADs for his Hepatitis C.  However, based his complaint that multiple nurses informed him he has only an undetectable viral load, that his medical records corroborate that fact, and that the DOC's court-approved protocol does not recommend DAADs for Hepatitis C cases of this severity, Young does not plausibly allege a serious medical need.

Plaintiff alleges that the DOC should administer DAADs to him pursuant to Abu-Jamal v. Wetzel, Civ. A. No. 16-2000, 2017 WL 34700 (M.D. Pa. Jan. 3, 2017).  In this case, the court found that the DOC's interim Hepatitis C protocol, which was effective November 20, 2015, was unconstitutional under the Eighth Amendment.  Id. at *5.  However, that protocol is no longer in effect.  Under the court-approved 2021 protocol which governs the DOC's determination, he does not currently require treatment.

The 2021 Hepatitis C protocol states that DAADs are to be prescribed for prisoners with a detectable viral load.  Based on his complaint, multiple medical providers at SCI-Phoenix have identified that Young did not have a detectable viral load of Hepatitis C as of July 29, 2022, and therefore, DAADs are an inappropriate treatment at this stage.

Even if Young plausibly alleges a serious medical need, he must allege that defendants exhibited deliberate

indifference to his medical needs, as viewed subjectively in light of the DOC's current attitudes and conduct at the time that the suit is brought. <u>Farmer</u>, 511 U.S. at 845-46. Young's complaint concedes that he was sent for check-ups, that his symptoms were investigated through blood tests, and that he was monitored for changes in his Hepatitis C viral load which would justify treatment with DAADs. Young has failed plausibly to allege deliberate indifference in violation of the Eighth Amendment. Consequently, his claim under the Eighth Amendment in Count II will be dismissed as to all defendants.

In Count III, Young further alleges that the medical testing conducted by the DOC over the relevant time period was involuntary medical research in violation of his right under the Eighth Amendment. Young avers that his Hepatitis C was left untreated in order to monitor the "course and progression of a curable disease." This is a conclusory allegation. Young's complaint and medical records show he had an undetectable viral load of the disease as of July 2022, and therefore, the failure to prescribe DAADs is in line with current DOC protocol and CDC standard of care.

VI

In Count IV, Young pleads that the DOC's medical testing on him over the relevant time period constituted unreasonable searches and seizures in violation of his Fourth

14

Amendment right.  This allegation fails.  From a reading of the complaint and medical records he cites, Young consented to such testing.  <u>See, e.g.</u>, <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218 (1973).

In Count V, Young alleges that his bodily fluids were taken from him without just compensation in violation of his Fifth Amendment right.  "The Takings Clause is 'designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.'"  <u>Ark. Game & Fish Comm'n v. United States</u>, 568 U.S. 23, 31 (2012) (quoting <u>Armstrong v. United States</u>, 364 U.S. 40, 49 (1960)).  Young's complaint and medical records demonstrate that his bodily fluids were taken voluntarily and as part of routine medical examinations for the purposes of diagnosis.  This is not a governmental intrusion which may be actionable under the Takings Clause.  This claim fails.

In Count VI, Young makes conclusory allegations that the DOC has falsified his medical records and tampered with his medical records.  He does not provide any specifics.  This claim is not plausible.

Accordingly, Counts IV, V, and VI will be dismissed for failure to state a claim.

VII

Finally, in Count VII, Young avers a claim under
Pennsylvania law for medical malpractice.[4]  Under Pennsylvania
law, a plaintiff must file a certificate of merit within sixty
days of the filing of his or her complaint in any action, such
as an action alleging medical malpractice, based upon
allegations that plaintiff's injury arose from a licensed
professional deviating from the acceptable professional
standard.  See Pa. R. Civ. P. 1042.3(a).  Our Court of Appeals
has held that this is a substantive requirement and therefore
applies in an action filed in federal court.  See Booker v.
United States, 366 F. App'x 425, 426 (3d Cir. 2010); see also
Ligon-Redding v. Estate of Sugarman, 659 F.3d 258, 264-65 (3d.
Cir. 2011).  Young must file a certificate of merit as to each
licensed professional against whom he alleges a claim of medical
malpractice.  See Pa. R. Civ. P. 1042.3(b)(1).

A certificate of merit may take multiple forms:

(1)   an appropriate licensed professional has
      supplied a written statement that there
      exists a reasonable probability that the
      care, skill or knowledge exercised or
      exhibited in the treatment, practice or
      work that is the subject of the
      complaint, fell outside acceptable
      professional standards and that such
      conduct was a cause in bringing about the
      harm, or

---

4.   Young characterizes this claim as a breach of sworn legal
duty as well as negligence claims for medical malpractice.

16

      (2)    the claim that the defendant deviated
           from an acceptable professional standard
           is based solely on allegations that other
           licensed professionals for whom this
           defendant is responsible deviated from an
           acceptable professional standard, or
      (3)    expert testimony of an appropriate
           licensed professional is unnecessary for
           prosecution of the claim.

Pa. R. Civ. P. 1042.3(a)(1)-(3).  Young has not complied with

any of these requirements.

Young has simply provided statements by Melissa

Palmer, M.D., regarding hepatitis and liver disease.  These

statements are not tailored to Young's claims and do not discuss

whether there is a reasonable probability that the standard of

care employed by the medical professionals joined in this action

has fallen outside acceptable professional standards.  Dr.

Palmer's statements therefore fail Rule 1042.3(a)(1).

Similarly, Young has not attempted to proceed under Rule

1042.3(a)(2).

Young argues in his response that he does not need to

file a certificate of merit because "no special expertise or

expert testimony is needed to show . . . that the claim is not

frivolous[.]"  The court reads this as an attempt to proceed

under Rule 1042.3(a)(3).  The medical malpractice Young alleges

is not obvious.  Based on his allegations and his medical

records, Young has an undetectable viral load, and therefore,

treatment with DAADs is not required based on the DOC protocol

and CDC standards of care.  To maintain a claim of medical malpractice here special expertise is required.

Young's medical malpractice claim may not go forward because he has failed to provide a certificate of merit as required under Pennsylvania law.  Count VII will be dismissed without prejudice.[5]

---

5.    The Pennsylvania Rule of Civil Procedure 1042(6) states that entry of judgment of non pros may be entered for failure to file a certificate of merit.  Ligon-Redding, 659 F.3d at 263. No such mechanism exists in federal court, but our Court of Appeals has determined such judgment is the equivalent of a dismissal without prejudice.  See Booker, 366 F. App'x at 426-27 (citing Stroud v. Abington Mem'l Hosp., 546 F. Supp. 2d 238, 249 (E.D. Pa. 2008); Scaramuzza v. Sciolla, 345 F. Supp. 2d 508, 510-11 (E.D. Pa. 2004)).